ON APPLICATION FOR REHEARING
The original opinion in this case is withdrawn and the following opinion substituted therefor:
This dispute between Mississippi Valley Title Insurance Company (hereinafter "Mississippi Valley") and Larry G. and Judy A. Hardy arose out of a transaction in which the Hardys executed a note and a defective mortgage on their single-family residence. Mississippi Valley is suing the Hardys for an equitable lien in the amount of $47,000.00, plus the amount of interest due on the note, and for a judgment for the amount due on the promissory note. The trial court granted a summary judgment in favor of the Hardys on the ground that Mississippi Valley's claim for an equitable lien and payment on the note should have been filed as a compulsory counterclaim in a prior lawsuit between the Hardys and the mortgagee and involving the same transaction. Mississippi Valley appeals from that judgment. We affirm.
Mrs. Hardy spoke to a representative of Hammer Construction Company, who agreed to build a house for her and agreed to perform the job in a good and workmanlike manner. Several days later Mrs. Hardy signed her and her husband's name to an installment sales contract, a note, and a disclosure statement.
The house was to be constructed on approximately 0.35 acres of land that had been conveyed to the Hardys by Harvey M. and Dorothy W. Kingsland. The Hardys did not pay for the land; rather, the lot was to be paid for from the proceeds of a loan.
Mrs. Hardy allegedly signed a mortgage on the house to Hammer Construction Company on June 23, 1983; however, Mr. Hardy testified that he did not knowingly sign the mortgage. Subsequently, the mortgage was transferred to Goldome Credit Corporation (previously Colonial Financial Services, Inc.).
The Hardys had problems with the house after they moved in, and they never made payments to Hammer Construction Company *Page 1059 
or to Goldome Credit Corporation (hereinafter "Goldome"). Soon after they moved in, the Hardys moved out of the house. Goldome foreclosed on the mortgage and purchased the property at the foreclosure sale.
Thereafter, the Hardys filed a complaint in the Circuit Court of Escambia County against Goldome, Hammer Construction Company, and Homes of the South, Inc. The Hardys sought to set aside the mortgage and the foreclosure and demanded recovery of the real property that they had obtained from the Kingslands. The Hardys claimed that they did not knowingly sign the mortgage to Hammer Construction Company and that either the signatures were forgeries or they were procured by fraud. The case went to trial and the jury returned a verdict on the special interrogatory as follows:
 We, the Jury, find that the plaintiffs, Larry G. Hardy and Judy A. Hardy, did not sign the document introduced into evidence as Defendant's Exhibit 1 in the presence of Patsy Kirkland.
Final judgment was entered in favor of the Hardys.
Goldome subsequently filed a motion for a judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. The trial court never ruled on that motion and it was deemed to be denied. Rule 59.1, Ala.R.Civ.P.
Goldome appealed to the Court of Civil Appeals, claiming "that the Hardys were not entitled to relief from the mortgage without restoring the consideration received, presumably referring to the property," and "that if the mortgage [was] to be declared invalid and the foreclosure set aside, there should be declared an equitable mortgage on the property in favor of Goldome." Goldome Credit Corp. v. Hardy, 503 So.2d 1227, 1228
(Ala.Civ.App. 1987). The Court of Civil Appeals denied Goldome's request for equitable relief. The Court of Civil Appeals found no request for equitable relief in the pleadings or in the transcript of the evidence. Specifically, Goldome had made no counterclaim or any request for equitable relief until it appealed; to do so at that time, the Court of Civil Appeals held, was too late.
After Goldome lost on appeal, it assigned its interest in the mortgage and the Hardys' promissory note to Mississippi Valley. Mississippi Valley then filed this lawsuit, claiming an equitable lien and demanding payment on the promissory note.
The trial court gave the Hardys a summary judgment on Mississippi Valley's claim, on the ground that it should have been filed as a compulsory counterclaim in the previous lawsuit and was, therefore, barred.
The primary issue on appeal is whether the trial court properly granted the Hardys' summary judgment; i.e., whether Mississippi Valley's complaint was a compulsory counterclaim that should have been filed in the previous lawsuit involving the same transaction. We affirm.
Rule 13(a), Alabama Rules of Civil Procedure, states:
 Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . . In the event an otherwise compulsory counterclaim is not asserted in reliance upon any exception stated in paragraph (a), relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to assert the claim.
Where claims are logically related and arise from the same transaction or occurrence, they are compulsory counterclaims. We have held:
 "[Claims are logically related] to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the *Page 1060 
courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently."
Desroches v. Ryder Truck Rental, Inc., 429 So.2d 1010, 1012
(Ala. 1983), quoting Great Lakes Rubber Corp. v. Herbert CooperCo., 286 F.2d 631, 634 (3rd Cir. 1961).
Our decision in Brooks v. Peoples National Bank ofHuntsville, 414 So.2d 917 (Ala. 1982), involved facts quite similar to those of the instant case. In Brooks, the Brookses sued a bank for fraud in the inducement of the execution of a promissory note and mortgage. At that point, the Brookses were in default on the note. The bank did not counterclaim, but later filed a separate action for payment on the promissory note. The Brookses asserted as an affirmative defense that the claim should have been filed as a compulsory counterclaim in the earlier lawsuit. On appeal, this Court held that because the claims arose from the same transaction and because "the claim for fraud in the inducement and the claim for default on the note alleged to have been fraudulently induced [were] logically related," Brooks, 414 So.2d at 919, the bank's claim was compulsory. The Court reasoned:
 The rule on compulsory counterclaims should receive a "broad realistic interpretation in light of the interest of avoiding a multiplicity of suits." [Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357 (1979) (quoting 8 Moore's Federal Practice ¶ 13.13 at 300).] The action arises out of an allegedly single, continuous loan transaction. The evidence necessary to prove each overlaps, and the facts, taken as a whole, serve as a basis for both claims. Furthermore, the claim for fraud is an affirmative defense in an action for default. In sum, judicial economy would be served by a single discovery and presentation of the facts.
Id. The consolidation of logically related claims[1] arising from the same transaction or occurrence promotes judicial economy by avoiding needless repetition and eliminating the possibility that different factfinders might reach contradictory results on the same facts.
As the assignee of Goldome's interest in the mortgage and note, Mississippi Valley is subject to the same defenses Goldome would have been subject to. Therefore, if Goldome could have sued for an equitable lien or for payment on the note in the previous lawsuit, then Mississippi Valley's claim is precluded because it should have been filed as a compulsory counterclaim in the prior lawsuit and, therefore, Goldome would now be subject to that defense.
Mississippi Valley's only argument on appeal is that Goldome could not have counterclaimed for an equitable lien and payment on the note at the time it filed its answer to the Hardys' complaint because Goldome's claim had not "matured" at that point. Mississippi Valley argues that in order for Goldome to have been able to sue for an equitable lien, Goldome must have been able to prove that the Hardys had a "mortgageable interest in the property sought to be charged as security," Murphy v.Carrigan, 270 Ala. 87, 91, 116 So.2d 568, 571 (1959). The Hardys allegedly signed a mortgage to Hammer Construction Company (who transferred its interest to Goldome), but when the Hardys failed to pay, Goldome foreclosed on the property, with no opposition from the Hardys. At that point, Mississippi Valley argues, the legal and equitable title merged, and the property belonged to Goldome. See Trauner v. Lowrey,369 So.2d 531, 534 (Ala. 1979); Davis v. Huntsville Production CreditAss'n, 481 So.2d 1103, 1105 (Ala. 1985). Because *Page 1061 
legal and equitable title merged upon foreclosure, Mississippi Valley argues, the Hardys had no interest in the property sought to be charged as security; therefore, it argues, Goldome could not have brought this counterclaim at the time it answered the Hardys' complaint.
Mississippi Valley asserts that Goldome's claim did not mature until after the court entered its final judgment in the Hardys' suit against Goldome. At that point, Mississippi Valley states, Goldome's claim for an equitable lien and a judgment for payment on the note "matured." Therefore, Mississippi Valley asserts, its claim was not a compulsory counterclaim and the summary judgment was improper.
Although Mississippi Valley's argument sounds persuasive, we disagree. First, our decision in Brooks, supra, is controlling. In that case the bank's claim for payment on the promissory note arose at the time the Brookses defaulted on the loan; therefore, the bank should have filed a counterclaim in the prior suit between the parties involving the same transaction. Likewise, Mississippi Valley's claim for an equitable lien and payment on the note matured at the time the Hardys defaulted on the note, and a counterclaim for an equitable mortgage should have been filed in the prior action between Goldome and the Hardys. There is no question that Mississippi Valley's claim arose from the same transaction that was the subject of the prior lawsuit between the Hardys and Goldome, nor is there any question that this claim bears a "logical relation" to the earlier lawsuit. Therefore, on the authority of Brooks, the judgment of the trial court is due to be affirmed.
Mississippi Valley also made a mistake in the analysis of its rights by assuming that the Hardys somehow lost title to the land and home upon foreclosure. In Alabama,
 [c]onveyances for the alienation of lands must be . . . signed at their foot by the contracting party or his agent having a written authority; . . . the execution of such conveyance must be attested by one witness. . . .
Ala. Code 1975, § 35-4-20. If a conveyance is attempted and these requirements are not met, then the conveyance is void. See Thomas v. Davis, 241 Ala. 271, 2 So.2d 616 (1941). In this case, the court's judgment on the jury verdict was that the conveyance was void because the signatures were not attested to by a witness. However, the conveyance did not become void only when the court entered its judgment; rather, it is deemed to have been void from its inception. In this case, because the mortgage was void, the subsequent "foreclosure" of the property never had any force or effect. Therefore, Goldome never obtained title to the property, and the Hardys did, in fact, have a mortgageable interest in the property sought to be charged as security.
Finally, as is clear from the Court of Civil Appeals' opinion in Goldome, supra, when Goldome appealed to the Court of Civil Appeals, it asserted its claim for an equitable lien and payment on the note. The Court of Civil Appeals refused to consider Goldome's claims because the claims were not raised in a counterclaim or in any other form prior to appeal. If Goldome was dissatisfied with the Court of Civil Appeals' decision, its proper remedy would have been to petition this Court for review by certiorari, which Goldome failed to do.[2] Now Mississippi Valley, as the assignee of Goldome, is trying to assert precisely the same claim in a new lawsuit. This situation is a perfect illustration of the waste caused by trying to litigate a claim arising from the same transaction in two different lawsuits. Goldome, supra. In order to determine Mississippi Valley's right to an equitable lien and judgment on the note, the court would have to redetermine the same issues of fact. To permit a relitigation of the same facts in a lawsuit between the same parties would fly in the face of the purpose for a compulsory counterclaim. *Page 1062 
There is no justifiable reason why Goldome could not have filed its complaint for an equitable lien and judgment on the note at the time it filed its answer to the Hardys' complaint. Goldome did not need to, nor could it, wait until the court declared the mortgage void to make its claims.
Thus, the practical effect of our decision is that in a suit against a lender to set aside a note, the lender must, in addition to filing an answer, assert a compulsory counterclaim for any equitable relief to which the lender would be entitled if the Court. were to decide to set aside the note. For these reasons, as well as all the reasons we have previously set forth with regard to the purpose of compulsory counterclaims, we must affirm the summary judgment in favor of the Hardys. Mississippi Valley's claim for an equitable lien and for a judgment on the note should have been filed as a counterclaim during the earlier lawsuit.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
MADDOX, JONES, ALMON, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., and SHORES and STEAGALL, JJ., dissent.
[1] Of course, our use of the term "claim" implies that the cause of action had already accrued at that time.
[2] On rehearing, Mississippi Valley claims that it would have had no right to petition for certiorari under Rule 39(c), A.R.App.P. We disagree. For instance, although it may not have been granted, a petition based on the foreclosure issue could have been made pursuant to Rule 39(c)(3).